[Crim. No. 1208. In Bank.—August 17, 1905.]

## THE PEOPLE, Respondent, v. WALTER WARNER, Appellant.

CRIMINAL LAW—MURDER—DEFECTS IN COMPLAINT FOR ARREST—LEGALITY OF COMMITMENT — SETTING ASIDE INFORMATION.—Where the charge of murder against the defendant was examined by the committing magistrate, and the evidence taken warrants the holding of the defendant to answer, any defects in the complaint for arrest are cured, and the commitment is legal; and the information cannot be set aside for such defects.

ID.—APPOINTMENT OF STENOGRAPHER—PRESUMPTIONS OF REGULARITY.— The presumptions are that the proceedings for the commitment were regularly conducted in the absence of any showing to the contrary; and the stenographer who acted at the preliminary examination will be presumed to have been regularly appointed where no irregularity is made to appear.

ID.—QUALIFICATIONS OF JURORS—ASSESSMENT OF ESTATE—INSUFFICIENT SHOWING.—A juror· in whose name no property appears upon the assessment-roll was properly excused, notwithstanding a statement that he was an heir of a deceased person whose estate had real property on the assessment-roll of the county, in the absence of a showing that any part of the property belonged to him, or that he would upon final settlement of the estate become the owner of any of the property.

ID.—RULINGS UPON CHALLENGES FOR BIAS.—It was proper to overrule challenges for bias where the jurors would try the case impartially upon the evidence, notwithstanding opinions based upon public rumor or statements in public journals. Nor was it error to sustain a challenge for cause by the defendant merely because the prosecution concurred in it; nor to sustain a challenge by the prosecution to a juror unwilling to find a verdict resulting in death based upon circumstantial evidence.

ID.—IMPROPER QUESTION AS TO DEFENDANT'S TESTIMONY.—In the examination of jurors on their *voir dire* it was proper to disallow

a question as to whether they would give weight to the defendant's testimony on a material point if reasonably uncontradicted and not impeached.

ID.—ARGUMENT OF DISTRICT ATTORNEY—ZEAL OF COUNSEL.—Something must be allowed to the zeal of counsel on either side in arguing a criminal case to the jury; and where the comments of the district attorney upon the evidence against the defendant did not transcend the bounds of propriety or tend to prejudice the defendant in respect of any substantial right an objection thereto will not be sustained upon appeal.

APPEAL from a judgment of the Superior Court of Santa Barbara County.   J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

S. E. Crow, and H. C. Booth, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

VAN DYKE, J.—Defendant was accused by the district attorney of Santa Barbara County by information of the crime of murder.   He was tried and convicted of murder in the first degree and sentenced to death.

The evidence shows that about midnight on June 10, 1904, at the house of Lizzie O'Brien, in Santa Barbara, one Maria Tamayo was called to the door by defendant, who demanded money of her, and it being refused he shot her dead.

The appeal is taken from the judgment upon a bill of exceptions.   On behalf of the appellant the following points are made: 1. Error in the refusal of the court to set aside the information; 2. Error committed during the impanelment of the jury; 3. Error in the admission and rejection of testimony; and 4. Misconduct of the district attorney in his closing argument.

1. The main ground that seems to have been relied upon in support of the motion to set aside the information was, that there was nothing to show the year in which the crime was committed or that the testimony before the committing magistrate was reduced to writing under his direction, and that the transcript of the proceedings before the committing magistrate was filed with the clerk of the superior court.

(together with the complaint, subpœnas, and warrant), without any other verification than the signature of one Henry A. Dewing, without any evidence showing who Henry A. Dewing was. It is stated in the bill of exceptions that Joseph J. Price was at all times mentioned a justice of the peace in the second township of Santa Barbara County, California. The complaint in this case was signed and sworn to by Nat Stewart before said Price as justice of the peace of said township, charging the defendant with the crime of murder, upon which complaint a warrant was properly issued and returned on June 10, 1904, with the defendant, by the officer who made the arrest, to the justice of the peace issuing it. The examination that followed, as shown by the bill of exceptions, indicates that the examination was conducted according to the forms of the law, by questions and answers, and there seems to be no question as to the jurisdiction of the committing magistrate in the premises, nor as to the form of the commitment by said magistrate which followed the examination. It is not contended that the stenographic reporter was not appointed by the court, but it is urged that it does not appear from the transcript that he was so appointed. There is, however, nothing to show that the defendant was deprived of any substantial right. When a charge has been examined by a magistrate and the evidence taken, and the examination warrants an order holding the defendant to answer, the imperfections of the complaint are cured, and the commitment is legal. (*People* v. *Cole*, 127 Cal. 545, [59 Pac. 894].) In the late case of *People* v. *Lee Look*, 143 Cal. 216, [76 Pac. 1028], in considering the point made by appellant in support of his motion to set aside the information on various grounds antecedent to the commitment by the examining magistrate, this court said: "The object of the statute in providing for the issuance of a warrant of arrest is that the defendant may appear before a committing magistrate, and when he is once there, and an examination of the case is had in pursuance of the terms of the statute, and the defendant is held to answer, a foundation is laid for the filing of an information by the district attorney. The regularity of the proceeding by information did not, therefore, depend in any manner upon the affidavit on which the warrant of arrest was issued, and had no connection with it," referring to the case of *People*

v. *Velarde,* 59 Cal. 457. And, continuing: "If there be any-
thing inconsistent with these views in the two Department
cases of *People* v. *Christian,* 101 Cal. 471, [35 Pac. 1043],
and *People* v. *Howard,* 111 Cal. 655, [44 Pac. 342], cited by
appellant, they must be considered, so far as they are thus
inconsistent, as overruled by the other cases above cited."
(Citing several cases.) The presumptions are that the pro-
ceedings leading up to the commitment of the defendant by
the magistrate were regularly conducted, and it is necessary,
therefore, for the appellant to produce some showing to the
contrary, which has not been done in this case.

2. It is claimed certain errors occurred during the impanel-
ment of the jury. On the examination of juror A. C. Green-
well, in reply to the district attorney as to whether he was
on the assessment-roll of the county, he answered, "No, sir."
He was asked by the court whether he was on the last assess-
ment-roll for property in his own name, and he said, "No.
It is in the estate." And in answer to the defendant's attor-
ney he said he was one of the heirs of W. A. Greenwell, de-
ceased, and that the estate has real property in the county on
the assessment-roll. He stated again that he had no property
assessed in his own name; whereupon the court granted the
challenge of the district attorney and excused the juror. "A
person is competent to act as a juror if he be: 4. Assessed
on the last assessment-roll of the county, or city and county,
on property belonging to him." A person is not competent
who is not so assessed. (Code Civ. Proc., secs. 198, 199.)
This is not like the case of *People* v. *Owen,* 123 Cal. 487, [56
Pac. 251], cited by appellant. The challenge to the juror in
that case was based upon the evidence that the property of a
firm of which he was a member was upon the assessment-roll
in the name of the firm. The interest of each member of the
copartnership extends to every portion of his property (Civ.
Code, sec. 2402), and the facts of that case met the require-
ments of the code. Here it does not appear that any prop-
erty of the W. A. Greenwell estate that was upon the assess-
ment-roll of that county belonged to the juror in question, or
that he would upon the final settlement of the estate become
the owner of any of said property. We think there was no
error in the court excusing Mr. Greenwell from acting as a
juror in the case. The examination of Daniel Maloney does

not show a state of mind, indicating any bias in any degree, and the same is true of the examination of Grant Dewlaney, and the court did not err in refusing to excuse them on motion of the defendant. And the examination of juror Hart shows him to be without bias which would prevent him from giving the defendant a fair and impartial trial on the evidence in the case. And the same may be said with reference to jurors Bates and Haynes. The juror C. L. Donohoe was challenged by both the defendant and prosecution, and the court remarked, "It seems that both parties have challenged this juror on the same grounds. I think the challenge is sufficient." It is difficult to see how the defendant can be prejudiced where the juror against whom he makes an objection is excused by the court, although the prosecution may have concurred in the challenge. There was no error in excusing juror Eddy on motion of the prosecution, on the ground that he was not willing to find a verdict of guilty, if the effect would be punishment by death, on circumstantial evidence. Under the evidence such a verdict might be required in this case, as appears was so found. There was no error, therefore, in excusing the juror. In reference to the alleged disqualification of jurors Burt More, James P. Donahue, W. W. Dunn, and W. C. Smith, they all brought themselves within the provisions of the code, which declares that "no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matters or cause to be submitted to such jury, founded upon public rumor, statements in the public journals, or common notoriety; provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such an opinion, act impartially and fairly upon the matters to be submitted to him." (Pen. Code, sec. 1076.) The following is a sample of the examination of the jurors in question touching their qualifications. After stating that he had read in the paper of the examination and commitment, he was asked by defendant's attorney: "And does the fact that the defendant has been held to answer by a justice of the peace raise any presumption of guilt in your mind?—A. Why, I think so; I presume he would not have been held unless there was some evidence against him, or any other defendant.

"Q. The fact that the defendant is held, that is to some

extent to throw the burden upon the defendant to show that the justice was in error when he held him?—A. Well, they don't usually hold a man unless there is some evidence against him. I believe if there was no evidence at all against him I think he would have been discharged, not him in particular, but any person so held.

"Q. That is an opinion of yours in regard to criminal cases?—A. Yes. I think it is a presumption that there must have been some evidence or the officers would not have arrested him and the magistrate would not have held him.

"Q. When a defendant comes to the superior court from the justice's court, that is to your mind a presumption that there is some evidence against him?—A. I take it for granted that the officers of the law must have held him for some reason, or else they were incompetent—one or the other; it does not bias or prejudice me in the least so far as the guilt or innocence of the defendant is concerned any more than the officers would not have arrested or the magistrate have held him if there was not some evidence connecting him with the crime."

After the defendant had challenged the juror, upon an examination by the district attorney, the following occurred:—

"Q. Do you know anything about the facts of this case?—A. Nothing but what I read in the paper.

"Q. Have you formed any opinion regarding the merits of the case?—A. No. I can't say that I have.

"Q. Do you know the defendant?—A. I do not.

"Q. Ever seen him before?—A. No; not to know him.

"Q. Have you any bias or prejudice regarding the case?—A. Not at all.

"Q. If you were accepted and sworn as a juror can you try the case fairly and impartially?—A. I think I can.

"Q. And give to this defendant the benefit of any reasonable doubt?—A. Yes, sir."

On the oral argument of defendant's counsel, in support of this point as to the disqualification of the jurors, he was asked by a member of the court how he could get an intelligent jury if the rule he contended for was adopted, and he answered: "I think the whole tendency of our law is to deprive the prosecution of an intelligent jury. That is my candid

belief on it, but we claim the decisions support our contention in this respect.'' We do not agree with counsel that a fair construction of the law as it exists would lead to the absurdity suggested, and we think that the jurymen in question, notwithstanding what they had read in the papers with reference to the matter, showed themselves to be entirely qualified to act and give the defendant a fair and impartial trial. (Pen. Code, sec. 1076.)

In the examination of several of the jurors, after each had stated that he would consider the testimony of the defendant, if given, and would not reject it simply because he was the defendant, the court refused to allow the following question: ''If the defendant should himself testify on some material point, and his testimony was reasonable, not contradicted, and not impeached, would you give it weight?'' The question was clearly incompetent and the ruling was correct. A juror may be asked if he will consider all the testimony and evidence fairly and impartially, and give to each part of it such weight as, in his best judgment, under all the circumstances of the case, he deems it entitled to. It is his duty to do this. But it is highly improper, under any circumstances, to ask him, as this question in effect does, to promise in advance to give weight to any particular part of the testimony, either for or against the defendant.

3. We have examined the record with reference to the admission and rejection of testimony during the progress of the trial, and can see no error or irregularity which could have tended to the prejudice of the defendant, or prevent him from having a fair and impartial trial.

4. In the closing argument the district attorney stated as follows to the jury: ''Another fact in the case, gentlemen, is that the revolver had been recently cleaned; his statement was true that it was clean, an examination made of it immediately after it was taken from him showed that it had recently been fired twice. Now those are facts. Arkley's testimony sustains the testimony as to that fact. Mr. Stewart's testimony shows that it is true. This revolver which we have produced here is the weapon which was taken from him, is the weapon he had there that night, the only weapon connected with him and it had been fired twice. Now let us look at the testimony of Mrs. Ritchie, which counsel speaks so much about.

Her testimony that the defendant told her that the revolver was clean; he told her that at night. Her husband testified to that and the defendant told her that the next morning when he took out the revolver and opened it and told her it was clean. Why should he take out his revolver and tell her that? He did it. He took it out and in connection with that it was very natural for him to say what he had done. He had shot a woman. She asked him why he cleaned it. He cleaned it so the officers if they saw it would n't mistrust anything. Was not that reasonable? Will you, gentlemen of the jury, as reasonable men, question the testimony of that little woman as to those statements? She is not contradicted. No witness has been called to testify that the defendant did n't tell her that.'' At this point defendant's counsel excepted to that remark of the district attorney, on the ground that it is shown by the testimony that there were but two persons present at the conversation. The court was not requested to instruct the jury to disregard the comment, nor was the district attorney requested to withdraw the same, and nothing further was done. For the protection of the innocent who may be accused of crime, the law very properly has prescribed certain rules of practice in the trial of the accused which are to be observed as well in the case of the guilty as of the innocent. In carrying out these humane and wise provisions of the law it becomes the duty of the court, however, not to allow the ends of justice to be defeated by any refined technicalities. In this connection something must be allowed to the zeal of counsel on either side in discussing the case before the jury, and we cannot see that the comments of the district attorney on the testimony of this case transcended the bounds of propriety or had a tendency to prejudice the defendant. (*People* v. *Kelly,* 146 Cal. 119, [79 Pac. 846].) The code declares: ''After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties.'' (Pen. Code, sec. 1258.)

The judgment appealed from is affirmed.

Shaw, J., Angellotti, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.