[Crim. No. 2544. In Bank.—June 10, 1924.]

## THE PEOPLE, Respondent, v. MIKE HINSHAW, Appellant.

[1] CRIMINAL LAW—PLEADING—COMPLAINT—NATURE OF.—A criminal complaint is practically a deposition only. It should state the essential elements of the crime charged to a common certainty, but it is not necessary that it should do so with all the technical nicety of an indictment or information.

[2] ID.—COMPLAINT—TIME OF MAKING OBJECTIONS THERETO.—With respect to the sufficiency of the complaint under a motion to set aside, the complaint is intended only as a basis for a warrant of arrest and objections thereto must be availed of while the defendant is under the warrant of arrest.

[3] ID.—MOTION TO SET ASIDE INFORMATION—PROOF OF FACTS—COMMITMENT.—Facts alleged in the motion to set aside an information will not be taken as true without proof, and without such proof there is no error in denying the motion on the ground the defendant had not been legally committed by a magistrate.

[4] ID. — PLEADING — EVIDENCE — COMMITMENT. — When a charge has been examined by a magistrate and the evidence taken, and the examination warrants an order holding the defendant to answer, the imperfections of the complaint are cured, and the commitment is legal.

[5] ID.—PLEADING—COMPLAINT—ATTACK UPON—TIME—BASIS OF INFORMATION.—If the sufficiency of the complaint to justify the issuance of a warrant of arrest is not questioned before the committing magistrate it cannot be attacked on a motion to set aside the information; the information is based on the commitment and not on the complaint, the latter being merged in the former, and the district attorney may file an information for any offense shown by the depositions.

194 Cal.—1                    (1)

[6] ID.—COMMITMENT — SUFFICIENCY OF COMPLAINT — JURISDICTION.—
Considered with reference to the meaning of "legally committed,"
the complaint is sufficient in any case if it states an offense in
the terms of the statute, for such a complaint would vest the
magistrate with jurisdiction to consider the evidence offered in
support of the charge so far as the subject matter is concerned,
and the holding of the defendant for trial would depend on the
evidence and not the pleading.

[7] ID. — WORDS AND PHRASES — COMMITMENT — WORD "DEPOSITION"
EQUIVALENT OF "COMPLAINT."—The word "deposition" in a com-
mitment is the equivalent of "complaint."

[8] ID.—ASSAULT TO COMMIT BODILY INJURY—HOLDING OVER OF DE-
FENDANT—PLEADING—EVIDENCE.—The holding over of a defendant,
who was committed for trial for the offense stated in the com-
plaint, namely, assault by means and force likely to produce great
bodily injury as prescribed by section 245 of the Penal Code,
was justified where the offense charged in the amended informa-
tion was the same as that for which the defendant was held for
trial, and where it must be presumed that a preliminary examina-
tion was regularly held and that evidence sufficient to justify the
commitment was actually received.

[9] ID. — PRELIMINARY EXAMINATION — INSUFFICIENCY OF EVIDENCE —
HABEAS CORPUS—REMEDIES.—In connection with the question of
the sufficiency of the evidence to justify the holding on preliminary
examination, a remedy by *habeas corpus* is provided by subdivi-
sion 7 of section 1487 of the Penal Code.

[10] ID.—PLEADING—INFORMATION—COMPLAINT.—The district attorney
in drawing the information is not confined to the allegations of
the complaint, provided he charges the same offense for which the
defendant is held.

[11] ID.—DESCRIPTION OF ASSAULT — PLEADING — INFORMATION.—It is
permissible for an amended information in describing an assault,
a felony, under section 245 of the Penal Code, which is the basis
of the prosecution, to go more into details than the complaint as
to the means employed and the force used in the commission of
the assault.

[12] ID.—ASSAULT BY MEANS OF HANDS AND FISTS—SECTION 245,
PENAL CODE—PLEADING—NAMES.—In a prosecution under section
245 of the Penal Code for an assault by means and force, con-
sisting of hands and fists, likely to produce great bodily injury,
no prejudice could have resulted to defendant from misstating the
Christian name of the complaining witness in the complaint, the
commitment, and the information, where the correction was made
in the amended information and the surname was correctly alleged,
the criminal act being sufficiently identified without the correct
Christian name.

[13] ID.—MEANS OF ASSAULT—SUFFICIENCY OF INFORMATION.—In such prosecution, the amended information having alleged, by way of describing the means employed and the force used and where the force was directed, that the assault was made with the fists and hands upon the head and face and that the result was a fractured jaw and other grievous injuries, such allegations described both the means employed and the force used sufficiently to meet the language of the statute—"by any means or force likely to produce great bodily injury," and were "not the details or probative matter or particulars of evidence by which these material elements are to be established."

[14] ID.—PLEADING—EVIDENCE—ABSENCE OF MISCARRIAGE OF JUSTICE. In such prosecution, even if the amended information did not allege the offense sufficiently, the omission was supplied by the evidence on the trial, and hence under section 4½ of article VI of the constitution there was no miscarriage of justice; nor was the defendant prejudiced within the meaning of sections 960, 1258, and 1404 of the Penal Code.

[15] ID.—ONCE IN JEOPARDY—WHEN PLEA WILL LIE.—A plea of once in jeopardy will not lie in either a felony or misdemeanor case unless there has been a former acquittal or conviction upon a valid indictment or information before a competent court and a jury has been impaneled and sworn to try the charge.

[16] ID.—FILING OF FELONY CHARGE BEFORE DISMISSAL OF MISDEMEANOR CHARGE—COMPLIANCE WITH SECTION 1387, PENAL CODE.— The provision of section 1387 of the Penal Code that a dismissal of a misdemeanor complaint is a bar to a further prosecution unless the order is explicitly made for the purpose of amending the pleading is met where, before the motion to dismiss the misdemeanor complaint for simple assault is made, the complaint charging assault, a felony, by means and force likely to produce great bodily injury is on file.

[17] ID.—ADMISSIONS—EVIDENCE.—In such prosecution, the ruling of the trial court permitting, over defendant's objection, testimony of an admission by defendant that he had said in the county jail that he hit a man down the street and broke his jaw, was proper, for the admission (subd. 2, sec. 1870, sec. 1832, Code Civ. Proc.) tended to rebut the presumption of innocence, and the fact that defendant had not denied the assault rendered the admission no less provable.

[18] ID. — CORPUS DELICTI — ORDER OF PROOF — EVIDENCE. — In such prosecution, the people were entitled to make out their case

---

13. What constitutes the offense of assault with a deadly weapon, notes, Ann. Cas. 1912A, 1328; 45 L. R. A. (N. S.) 1272; 41 L. R. A. (N. S.) 182.

in chief without regard to whether the defendant denied the assault; and while it is true that the corpus delicti should first have been established, it cannot be said, and especially in view of the fact the assault was not denied, that the action of the court in yielding to the prosecution as to the order of proof was prejudicial.

[19] Id.—Statement of Complaining Witness to Policeman—Hearsay Evidence.—In such prosecution, the ruling excluding testimony as to what the complaining witness said to a policeman after the assault had been committed, upon the ground it was hearsay, was proper, since when the complaining witness spoke to the policeman the defendant had left the scene of the assault, and what was said may have been merely the narration of a past event, the same being true of the point as to what defendant said to the arresting officer after the assault.

[20] Id. — Hostile Declarations of Defendant Concerning Complaining Witness—Admissibility of.—In such prosecution, hostile declarations of defendant concerning the complaining witness before the assault in question were admissible as tending to reflect the state of mind of defendant at the time he committed the assault.

[21] Id.—Evidence—Province of Jury.—In such prosecution, it was solely for the jury to pass on the question whether the testimony of one referred to by the defendant as the only other eye-witness of the assault should have been accepted.

[22] Id.—Remark of Trial Judge—Waiver of Objection.—On appeal error cannot be predicated on a remark made by the trial judge to defendant in an apparent effort to have the latter speak louder when he was testifying, where it does not appear that any objection was made or that an admonitory instruction to the jury was requested at the time.

[23] Id.—Alleged Misconduct of District Attorney—Evidence.—Misconduct cannot be successfully predicated on the remarks of the district attorney "at the time of passing on the application for probation and pronouncing sentence," where the jury had rendered its verdict fifteen or sixteen days before, and it was after the motions for a new trial and in arrest of judgment had been denied.

[24] Id.—Evidence—Instructions.—In such a prosecution, it was not error to give an instruction which followed the introduction to subdivision 1 of section 2061 of the Code of Civil Procedure and which correctly declared the respective functions of the court and the jury in matters of evidence.

[25] Id.—Singling Defendant Out as Witness—Instructions.—A portion of an instruction which has the vice of singling out the defendant as a witness and charging as to his testimony should be omitted.

[26] ID.—EVIDENCE—INSTRUCTIONS.—An instruction which correctly de-
clared the rule of circumstantial evidence and stated that if the
evidence was sufficient to establish defendant's guilt the jury
should so find, whether the evidence be direct or circumstantial,
is not open to the objection that it led the jury "to consider cir-
cumstances which had no connection with the case."

[27] ID.—SELF-DEFENSE—INSTRUCTIONS.—Self-defense is not available
as a plea to a defendant who has sought a quarrel with the design
to force a deadly issue and thus, through his fraud, contrivance,
or fault, to create a real or apparent necessity for making a
felonious assault.

[28] ID.—PROVINCE OF JURY—INSTRUCTIONS.—In such prosecution, the
jurors are the final judges as to whether the defendant believed
he was in danger at the time he takes the law into his own hands
and they may accept or reject his testimony that he did so
believe.

[29] ID.—FLIGHT—INSTRUCTIONS.—In such prosecution, where the ques-
tion whether defendant left the scene because of a consciousness
of guilt, as claimed by the prosecution, or whether, as testified by
him, he left to avoid being struck by two rocks thrown at him
by the complaining witness, was involved in conflict, it was not
error to give an instruction, which was framed in hypothetical
form, covering the subject of flight.

[30] ID.—DEADLY WEAPON—INSTRUCTIONS.—In such prosecution, an in-
struction requested by defendant was erroneous in stating that if
defendant did not use a deadly weapon and did not intend to
commit murder the verdict must be for him.

[31] ID.—INSTRUCTIONS.—In such prosecution, a requested instruction
declaring that unless the means used was something other than
defendant's fists the offense would be only a misdemeanor was mis-
leading in view of the evidence, and it was open to the additional
objection that it charged that if the jury found defendant was
arrested and taken before the justices' court and the charge dis-
missed by the prosecution, such dismissal is a bar, the court is
without jurisdiction, and they must acquit him.

[32] ID.—USE OF FISTS OR HANDS — INSTRUCTIONS. — In such prosecu-
tion, a requested instruction declaring that the use of fists or
hands is not regarded as a deadly weapon was properly rejected
where it was not claimed that a deadly weapon was used.

[33] ID.—INSTRUCTIONS.—In such prosecution, a proposed instruction
charging the jury that the breaking of the jaw is not a probable
consequence of a blow with the bare fists, and he is not presumed
to have intended that result, "and if he did not so intend the
crime committed could be nothing more than a misdemeanor," was
properly refused.

[34] ID. — FACT — INSTRUCTIONS. — A proposed instruction telling the jury "that the fact of the disparity in size has nothing to do with the guilt or innocence of the defendant" violates section 19 of article VI of the constitution.

[35] ID.—BAR OF PROSECUTION—INSTRUCTIONS.—A proposed instruction which charged the jury that if they found defendant was only guilty of the offense provided by section 240 of the Penal Code and punishable under section 241 of the Penal Code the dismissal of the first complaint is a bar, and the jury must therefore acquit him, was properly rejected.

(20) 5 C. J., p. 785, sec. 318.   (21) 16 C. J., p. 930, sec. 2291. (22) 17 C. J., p. 62, sec. 3332.   (23) 17 C. J., p. 297, sec. 3638.   (24) 16 C. J., p. 1005, sec. 2427.   (25) 16 C. J., p. 1039, sec. 2479.   (26) 16 C. J., p. 1010, sec. 2434.   (27) 5 C. J., p. 749, sec. 235.   (28) 5 C. J., p. 793, sec. 337.   (29) 16 C. J., p. 985, sec. 2391.   (30) 5 C. J., p. 797, sec. 346.   (31) 5 C. J., p. 796, sec. 342; 16 C. J., p. 248, sec. 390.   (32) 5 C. J., p. 795, sec. 342.   (33) 5 C. J., p. 796, sec. 343.   (34) 5 C. J., p. 796, sec. 343.   (35) 16 C. J., p. 248, sec. 390.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

William M. Morse, Jr., for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

LAWLOR, J.—This is an appeal from a judgment of conviction under section 245 of the Penal Code and from an order denying defendant's motion for a new trial. Probably the inclusion in the notice of appeal of "all other orders . . . denying and overruling the various applications of the defendant . . . " has reference to the orders denying the motion to set aside the amended information, disallowing the demurrer, and denying the motion in arrest of judgment, none of which is appealable. They will, however, be reviewed on the appeal from the judgment.

At the time of the trouble out of which the charge grew, the complaining witness, Robert Ritter, and the defendant were rival newsboys in the city of Los Angeles. Ritter was

selling the "Los Angeles Herald" and the defendant the "Los Angeles Express." At the time of the alleged assault they were selling papers at the corner of Fifth and Hill Streets. One Isidore Gralla was also a newsboy. Before selling the "Express" in Los Angeles he attended a college in Berkeley and sold newspapers in Oakland. It was during this period that he met the defendant. While in Los Angeles he handled at Fifth and Hill Streets three papers, including the "Herald" and the "Express," and remained there until within two weeks of the alleged assault, when he established himself at Seventh and Alvarado Streets and employed the defendant to sell papers at Fifth and Hill Streets for the purpose "of helping push the sales of the 'Express' particularly." Gralla testified that "the 'Express' sort of guaranteed me to make up for what I lost getting those 'Heralds,' for this reason: If I would give them a little special representation there on the 'Express'; but they didn't really hire me." The people claimed that the defendant was under engagement with Gralla to get Ritter off of the corner of Fifth and Hill Streets within a week and that the week had not expired when Ritter was injured. A further statement of the facts of the case will later appear in a review of the evidence.

The defendant was arraigned upon the charge and following the interposition and denial of a motion to set aside the amended information and the filing and disallowance of a demurrer he pleaded not guilty. Upon the trial the following verdict was rendered: "We, the jury in the above-entitled action, find the defendant guilty of assault by means and force likely to produce great bodily injury, a felony, as charged in the information." In due course, the defendant was arraigned for judgment and motions for a new trial and arrest of judgment were respectively interposed and denied; whereupon, the defendant was sentenced to serve a term prescribed by law in the penitentiary at San Quentin.

1. The first point urged for reversal is that the court erred in denying the appellant's motion to set aside the amended information.

The grounds of the motion were: (I)"That before the filing of the amended information the defendant had not been legally committed by the magistrate"; (II) "That the transcript of the testimony taken before the committing

magistrate, [?] that no offense has been committed, of which the court has jurisdiction''; and (III) "That the said transcript of testimony does not show that there was any evidence from which the committing magistrate could conclude that there was reasonable cause to believe the defendant guilty of any offense of which this court had jurisdiction.''

When the case was called after the filing of the first information the district attorney moved for a continuance to file an amended information, which motion was granted and subsequently the amended information was filed.

It is also urged in support of the motion that the amended information charged a different offense than that contained in the complaint and in the order of commitment. The complaint alleged that "the crime of assault, a felony, was committed by Mike Hinshaw, who, at the time and place last aforesaid did then and there, with force and violence, . . . in and upon the person of one William Ritter, make an assault, which said assault was likely to and did produce great bodily injury'' upon the person of the complaining witness. In the order of commitment the language is— ''the offense in the within deposition mentioned, to wit: Assault, a felony has been committed.'' The allegations of the amended information appear in connection with the discussion of the demurrer. This contention is supplemented by the claim that "the crime charged in the complaint and the crime charged in the commitment are not crimes known and described in any sections of the Penal laws of the State of California,'' and is apparently based on the theory—insisted upon by appellant throughout—that he was not charged with a felony in the complaint, nor in the amended information, nor was he held to answer for a felony, nor does the evidence show he was convicted of a felony.

Two grounds are stated in section 995 of the Penal Code for the setting aside of an information—(1) "that before the filing thereof the defendant had not been legally committed by a magistrate'' and (2) that it was not subscribed by the district attorney.

We shall consider under point 2 the sufficiency of the amended information as matter of pleading.

[1] "The complaint is practically a deposition only. It should state the essential elements of the crime charged to

a common certainty, but it is not necessary that it should do so with all the technical nicety of an indictment or information.'' (7 Cal. Jur. 963.)

[2] With respect to the sufficiency of the complaint under a motion to set aside, it has been held that it is intended only as a basis for a warrant of arrest and that objections thereto must be availed of while the defendant is under the warrant of arrest (7 Cal. Jur. 964, citing among other authorities, *People* v. *Warner,* 147 Cal. 546 [82 Pac. 196]; *People* v. *Lee Look,* 143 Cal. 216 [76 Pac. 1028]; *People* v. *Cole,* 127 Cal. 545 [59 Pac. 984]. See, also, *People* v. *Beach,* 122 Cal. 37 [54 Pac. 369]). It is not claimed nor disclosed that the complaint was attacked before the committing magistrate on the ground it did not state a public offense. [3] Facts alleged in the motion to set aside an information will not be taken as true without proof, and without such proof there is no error in denying the motion on the ground the defendant had not been legally committed by a magistrate (*People* v. *Williams,* 84 Cal. 616 [24 Pac. 145]).

[4] The general rule is well stated in *People* v. *Warner, supra:* ''When a charge has been examined by a magistrate and the evidence taken, and the examination warrants an order holding the defendant to answer, the imperfections of the complaint are cured, and the commitment is legal. (*People* v. *Cole,* 127 Cal. 545 [59 Pac. 984].) In the late case of *People* v. *Lee Look,* 143 Cal. 216 [76 Pac. 1028], in considering the point made by appellant in support of his motion to set aside the information on various grounds antecedent to the commitment by the examining magistrate, this court said: 'The object of the statute in providing for the issuance of a warrant of arrest is that the defendant may appear before the committing magistrate, and when he is once there, and an examination of the case is had in pursuance of the terms of the statute, and the defendant is held to answer, a foundation is laid for the filing of an information by the district attorney. The regularity of the proceeding by information did not, therefore, depend in any manner upon the affidavit on which the warrant of arrest was issued, and had no connection with it,' referring to the case of *People* v. *Velarde,* 59 Cal. 457. And, continuing: 'If there be anything inconsistent with these views in the two Department cases of *People* v. *Christian,* 101 Cal. 471 [35 Pac.

1043], and *People* v. *Howard,* 111 Cal. 655 [44 Pac. 342], cited by appellant, they must be considered, so far as they are thus inconsistent, as overruled by the other cases above cited.' (Citing several cases.) The presumptions are that the proceedings leading up to the commitment of the defendant by the magistrate were regularly conducted, and it is necessary, therefore, for the appellant to produce some showing to the contrary, which has not been done in this case." We quote from *People* v. *Sacramento Butchers' Assn.,* 12 Cal. App. 471, 478 [107 Pac. 712] : "The instrument upon which the warrant of arrest is authorized to be issued by a magistrate in the case of an indictable offense is not a 'complaint' in the sense that it is a pleading, but is practically a deposition only, setting forth the facts stated by the informant, sufficiently showing the commission of an offense and its perpetration by the defendant to justify the issuance of a warrant of arrest by the magistrate. (Pen. Code, secs. 811, 812.) The commitment is based upon all the depositions and not alone upon the so-called complaint, and the information is in turn founded upon the order of commitment."

[5] It is plain from the authorities that if the sufficiency of the complaint to justify the issuance of a warrant of arrest is not questioned before the committing magistrate it cannot be attacked on a motion to set aside; that the information is based on the commitment and not on the complaint —that the latter is merged in the former—and that the district attorney may file an information for any offense shown by the depositions. [6] It follows that considered with reference to the meaning of "legally committed" the complaint is sufficient in any case if it states an offense in the terms of the statute, for such a complaint would vest the magistrate with jurisdiction to consider the evidence offered in support of the charge so far as the subject matter is concerned, and the holding of the defendant for trial would depend on the evidence and not the pleading. The question is then presented whether the commitment was sufficient to warrant the filing of an information in this case. [7] It has been held that the word "deposition" in a commitment is the equivalent of "complaint." [8] The appellant was committed for trial for the offense stated in the complaint, and whether the holding over was justified must

rest upon two propositions—was the offense charged in the amended information the same as that for which the appellant was held for trial, and was a preliminary examination held at which evidence was received. As to the first proposition it has been shown that the complaint upon which the commitment is made to depend did purport to charge the conventional offense of assault by means and force likely to produce great bodily injury as prescribed by section 245, and the identical offense is charged, only with more detail, in the amended information. With reference to the second proposition we have not found in the record that the transcript of the testimony and proceedings on the preliminary examination was offered in support of the motion to set aside the information. It must therefore be presumed that a preliminary examination was regularly held and that evidence sufficient to justify the commitment was actually received (*People* v. *Williams, supra*). Without regard to this question, however, and dealing with the meaning of the term "legally committed by a magistrate" it was declared in *People* v. *Beach, supra:* "It is contended that the defendants had not been legally committed because the evidence before the magistrate did not show that a public offense had been committed. If the magistrate had no power or jurisdiction to hold the examination, if no complaint had been made charging the defendants with a public offense, and perhaps if no evidence at all was taken by the magistrate, and there was no waiver by the defendants, it might be held that the defendants had not been legally committed. (*People* v. *Howard*, 111 Cal. 655 [44 Pac. 342].) The phrase 'legally committed' refers to the examination of the charge and holding the defendant to answer by the magistrate. (*Ex parte Baker*, 88 Cal. 84 [25 Pac. 966].) If a magistrate, upon a complaint duly made and charging a public offense, has heard the evidence and has committed the defendant, that ends the matter so far as concerns this motion.

"The question here is not, as upon *habeas corpus*, whether a person is illegally deprived of his liberty, but whether he can legally be tried upon a criminal charge. A preliminary examination and commitment by a magistrate is required before an information can be filed, and an examination by a grand jury before an indictment, not so much to protect

the liberties of the citizen as to protect them from being prosecuted upon slight evidence or mere suspicion, or at the instigation of private malice. A trial before a jury must still be had before a final judgment can be made depriving an accused person of his liberty. . . .

"The right to have a charge dismissed is regulated by statute, and, as we have seen, the phrase 'legally committed' means only that the accused has been committed by a magistrate who has jurisdiction to hold the examination, and who has actually heard the evidence and determined that probable cause exists for holding the defendant.

"The point was decided in *People* v. *More*, 68 Cal. 500 [9 Pac. 461]. Counsel attempt a distinction on the ground that the alleged defect there was that venue was not shown, but the difference is not obvious. If the point was founded in fact there as here the evidence failed to show an offense for which the magistrate could legally hold the accused person. The decision was a construction of section 995 of the Penal Code, and holds that on the motion to set aside the information the superior court cannot review and overrule the finding of the magistrate that the evidence taken before him was sufficient."

[9] In connection with the question of the sufficiency of the evidence to justify the holding on preliminary examination it is proper to point out that a remedy by *habeas corpus* is provided by subdivision 7, section 1487, of the Penal Code.

Referring again to the contention that the amended information charged a different offense than that covered by the complaint and the commitment, we quote from appellant's brief: "The District Attorney in filing the amended information in this action has taken greater liberties with this complaint and commitment than is allowed under the law. [Here follows a statement of what is alleged in the complaint.] There is no suggestion that it was by means or force likely to produce great bodily injury in the language of Section 245 of the Penal Code. The District Attorney . . . has no authority to amend or modify the complaint and commitment on which the defendant was examined . . . he cannot add anything thereto in describing the offense for which he would try the defendant. . . . In the case at bar he charged the defendant with a different assault than the one on which he was examined and against a different person. . . . So the

district attorney was entirely wanting in authority to add to the description of the offense as he attempted to do in the amended information. Neither could he under the law charge the alleged offense to have been committed against Robert Ritter when the complaint on which defendant was examined by the magistrate alleged it to be committed against William Ritter.''

Appellant has cited a number of authorities to the effect that the district attorney has no authority to file an information for a different offense than the one shown by the commitment (*People* v. *Parker,* 91 Cal. 91 [27 Pac. 537] ; *People* v. *Wallace,* 94 Cal. 497 [29 Pac. 950] ; *People* v. *Christian,* 101 Cal. 471 [35 Pac. 1043] ; *People* v. *Howard,* 111 Cal. 655 [44 Pac. 342] ). These authorities involve section 809 of the Penal Code, but the distinction must be observed between charging a different offense and charging the same offense differently.  [10]  The district attorney in drawing the information is not confined to the allegations of the complaint, provided he charges the same offense for which the defendant is held.  This is the meaning of the authorities above cited, as well as *People* v. *Rippe,* 32 Cal. App. 514 [163 Pac. 506] ; *People* v. *Miller,* 34 Cal. App. 641 [168 Pac. 574] ; *People* v. *Wilhite,* 49 Cal. App. 246 [193 Pac. 151] ; *People* v. *Liberty,* 39 Cal. App. 360 [178 Pac. 868].  It was held in *Ex parte Chambers,* 32 Cal. App. 476 [163 Pac. 223] : ''The amendment of the indictment or information by the district attorney is permitted subject to the limitation that the amendment shall be as to matters of form only and not in matters of substance.''  In that case the amendment made more certain the date of the instrument set out in the indictment, which date formed the basis of the charge of perjury involved.  As already stated, the complaint and the amended information herein charged and the commitment held appellant for the same offense.  [11]  An assault, a felony, under that branch of section 245 was the basis of the prosecution, but the amended information in describing the offense went more into details than the complaint as to the means employed and the force used in the commission of the assault.  This was clearly within the rule.  Although the appellant claims the amended information charges a different offense than the complaint, he has not pointed out wherein it does.

[12]   With respect to the error in the name of the complaining witness in the complaint, the commitment, and in both informations, it may be stated that, according to the reporter's transcript, permission was given to correct the name in the amended information, and the correction was made before the jury was impaneled and sworn. In any event no prejudice could have resulted as the surname was correctly alleged. Moreover, it cannot be maintained that the criminal act was not sufficiently identified without the correct Christian name. (Sec. 956, Pen. Code.) The motion to set aside the amended information was properly denied.

2. We will consider the demurrer under this head. It is insisted that the amended information fails to charge a felonious assault. The charging part of the first information reads: "That the said Mike Hinshaw . . . did then and there, with force and violence, . . . feloniously, in and upon the person of one William Ritter, make an assault, which said assault was likely to and did produce great bodily injury to and upon the person of said William Ritter." In amending the information the following allegations in brackets were added: ["in that he, the said Mike Hinshaw, did then and there . . . strike and beat the said Robert Ritter about the head and body and did then and there strike and beat the said Robert Ritter about and upon the head and face with his fists and hands with all the force and violence that he, the said defendant, Mike Hinshaw, was then and there able to exercise, and which said striking and beating did then and there cause the fracture of the jaw of the said Robert Ritter together with other grievous bodily injuries, and which said striking and beating was by means likely to and which did produce great bodily injury to the said Robert Ritter."]

Paragraphs (a) and (b) of specification I may be passed as not having any place in a demurrer. The remaining specifications—II, III, IV, V, and VI—are on the grounds mentioned in sections 950, 951, and 952 of the Penal Code to which are added certain special grounds. Section 954 is also mentioned but we do not perceive its applicability. Apart from the conventional grounds of demurrer it is alleged that the amended information does not state the means used by which it was intended to charge that the

appellant employed means likely to produce great bodily injury; whether the appellant used some other instrument than his fists and hands in order to do the injuries complained of or whether "it is simply intended to charge that the defendant committed a battery upon the prosecuting witness, and no more"; "whether and by what means the force and violence complained of that did the damage and injury to the prosecuting witness was applied other than with his fists and hands"; and that it states no cause of action coming within the jurisdiction of the superior court and is in fact nothing but a complaint for the commission of a battery. We quote from appellant's petition for rehearing in the district court of appeal: "The amended information does not state facts sufficient to constitute a public offense under the laws of the State of California, in this, that there is no specification of the means used to produce great bodily harm other than the fist . . . that the use of the fist is not the use and means likely to produce great bodily harm and no other means are specified. The allegations of the pleader in the amended information that the said defendant 'did then and there strike and beat the said William Ritter about and upon the head and face with his fists and hands with all the force and violence that the said defendant Mike Hinshaw, was then and there able to exercise,' is not an allegation of fact but simply a conclusion of the pleader and the next portion of said amended information which reads as follows; 'and which said striking and beating did then and there cause the fracture of the jaw of the said William Ritter, together with other grievous bodily injury,' is a pleading of evidence and not the statement of a public offense. The next assertion in said amended information is as follows: 'and which said striking and beating was by means likely to and which did produce great bodily injury to the said William Ritter' is not an allegation of any of the elements of an assault, a felony, which says that the assault must be by means likely to and which did produce great bodily injury. The last quotation from the amended information is but a statement of a conclusion of the pleader and not a statement of the fact."

Appellant has cited *People* v. *Perales,* 141 Cal. 581 [75 Pac. 170], which held that the phrase "with a heavy wooden stick" did not charge a felonious assault; *People* v. *Brown,*

42 Cal. App. 462 [183 Pac. 829], wherein "with a rawhide whip on the naked body" was declared sufficient to charge a felonious assault under the portion of section 245 we are considering; *People* v. *Emmons,* 61 Cal. 487, holding the allegation that the defendant "with force and violence did then and there seize and throw out of the attic window . . . situate in the third story," the complaining witness, sufficiently charged the offense; and *People* v. *Pape,* 66 Cal. 366 [5 Pac. 621], which declared sufficient an allegation of a deadly weapon—"a tin box filled with gunpowder." Appellant also relies on the following language in *People* v. *Munn,* 65 Cal. 211, 212 [3 Pac. 650], wherein murder was charged and a verdict in the second degree rendered: "It may be conceded that an assault with the fist, or without the use of a deadly weapon, may be made in such a manner and under such circumstances as to make the killing murder, but the law draws a broad distinction in cases generally between an assault committed with a deadly weapon, and a simple assault and battery. The former amounts to a felony, whereas the other is merely a misdemeanor." Appellant cites *People* v. *Murat,* 45 Cal. 281, to the point that "an assault made without the use of a deadly weapon with intent to do great bodily harm and not to do murder, is a misdemeanor, nothing more." This language appears in that case: "But an assault made with intent not to commit murder, but only to do a lesser bodily harm, is not constituted a felony, unless such an assault was made with a deadly weapon, or by resort to means of a deadly nature. The character of the particular agency employed by the prisoner in making such an assault is of the substance of the offense, as constituting it a felony, for an assault made without the use of a deadly weapon, with intent to do mere bodily harm, and not to do murder, is a misdemeanor, nothing more."

The point to the contention is that if there was any physical disparity between appellant and the complaining witness, or if the latter had been taken off his guard at the time he was struck and either or both of these elements constituted the force behind the impact which rendered the assault felonious, such fact or facts should have been alleged. The statute uses "means" and "force" in the disjunctive and the amended information charged in the conjunctive. It

would be sufficient, however, if either "means" or "force" was alone alleged. In the course of the oral argument, in reply to a question put to him by the court, counsel for appellant stated that if the physical disparity had been alleged the pleading would have been sufficient. It is alleged that appellant with all the force and violence he was able to exercise did strike and beat the complaining witness about and upon the head and face with his fists and hands and that such striking and beating fractured his jaw and caused other grievous bodily injuries.

Concerning section 245, it was said in *People* v. *Perales,* *supra,* as to the allegation that the means used was "a heavy wooden stick": "While it is the general rule that it is sufficient to charge an offense in the language of the statute, yet this rule is subject to the qualification, that where a more particular statement of facts is necessary in order to charge the offense definitely and certainly, it must be made. . . . The term, however, 'or by any means of [or] force' likely to produce great bodily injury, immediately following in the section, is a general and comprehensive term designed to embrace many and various means or forces, which, aside from a deadly weapon or instrument, may be used in making an assault. What these means or forces may be, other than that they must be such as are likely to produce great bodily injury, the statute does not declare or define. As an example of such means it specifies a deadly weapon; as to any other means its language is general and indefinite. . . . A 'heavy wooden stick' is not *ex vi termini* a deadly weapon, or a deadly instrument. Nor does this description suffice to show that it is either. Neither, as described, is it necessarily a means likely to produce great bodily injury. In fact, it is not described at all, except by the indefinite statement that it was 'heavy.' Describing a stick as 'heavy' imparts no certain information; the term is relative; a stick which in the hands of a boy, or a feeble person, would be considered heavy, in the hands of a robust person would be deemed light. Again, it might be heavy, and yet so large and unwieldy as to be useless, in the hands of a powerful man, towards the commission of an assault. It might, too, be heavy, and yet so small, or short, that no danger of bodily harm could reasonably be apprehended from its use. Aside from the use of the term 'heavy,' there is no description in

the information as to the definite weight, strength, or size of the stick, or other qualities, properties, or characteristics, showing that it was a means likely to produce great bodily injury.''

The allegation in the case at bar differs from that involved in *People* v. *Perales, supra.* In the latter case there is no description as to how the stick was used, upon what part of the body the assault was made, and no indication of the degree of force used by alleging the result of the assault, or the like. In short, facts were not alleged from which danger of bodily harm might be reasonably apprehended. [13] The pleading here, by way of describing the means employed and the force used and where the force was directed, alleges that the assault was made with the fists and hands upon the head and face and that the result was a fractured jaw and other grievous injuries. Such allegations under the circumstances of this case describe both the means employed and the force used which we think meet the language of the statute—''by any means or force likely to produce great bodily injury,'' and are ''not the details of probative matter or particulars of evidence by which these material elements are to be established'' (Pomeroy's Code Remedies, 4th ed., p. 555). The suggested allegation of physical disparity would not necessarily indicate the force used, for it would be the force of the impact and the circumstances under which the force was applied rather than the relative size of the men which would constitute the assault, for a small man might deliver a blow with more force than a larger one. The evidence is in conflict as to the events immediately preceding the blow and the relative position of the principals, but in view of some of the evidence of the prosecution that at the precise moment the assault was made the complaining witness was taken by surprise and struck from behind it would be proper to so allege by way of describing the force with which the blow was delivered and the gravity of the assault. *People* v. *Perales, supra*, in our opinion, is clearly distinguishable. It was said in *People* v. *Brown, supra*, with reference to the allegation of an assault with a rawhide whip upon the naked body, that it came within the rule followed in *People* v. *Perales, supra*. Where a rawhide whip is applied to a naked body, less force would be necessary to constitute a felonious assault than if the body were

protected by clothing, just as a blow on the jaw when the
assaulted party is not prepared for it or is not moving away
from it may have graver consequences. The statement in the
case of *People* v. *Munn, supra,* that death resulting from a
blow of a fist without aggravating circumstances does not con-
stitute murder is undoubtedly correct. The defendant in
*People* v. *Murat, supra,* was indicted for an assault to kill
and murder, and convicted of an assault with a deadly
weapon, but it was not alleged that the assault was made with
a deadly weapon, and as there was no allegation to support
the crime of which the defendant was convicted the judgment
was properly reversed.

3. But even if the demurrer and motion in arrest of judg-
ment should, in strictness, have been granted, we do not
think the error constituted a miscarriage of justice. The
constitutional rule of decision on appeal includes error in
any matter of pleading (art. VI, sec. $4\frac{1}{2}$), and we will ex-
amine the evidence in the light of this provision.

According to the evidence the complaining witness was
twenty-nine years old, weighed between 132 and 135 pounds
at the time of the injury and 128 at the time of the trial.
He was not athletic and had never boxed; he complained of
a weak heart, but the doctor who gave him a physical ex-
amination after the injury stated the patient appeared
under-nourished but not diseased. Ritter gave up a job as a
driver of a delivery wagon because the work was too heavy
for him. He testified that he had commenced selling the
"Los Angeles Evening Herald" on this particular corner
about April 1st—some fourteen days prior to the alleged
assault, and that about April 7th the appellant started
selling the "Los Angeles Express" on the same corner;
previous to April 7th he had seen him on that corner several
times, "but he wasn't working—standing around there."
Appellant's version was, that he commenced selling the
"Express" on that corner about April 1st, and that Ritter
was selling the "Herald" at the same time. The difference
in the testimony as to when appellant started work on the
corner is probably due to the fact that he counted himself
working when Ritter assumed he was only being broken in
on the job. At all events, it is clear that appellant was
engaged on the corner from April 1st, but he probably did
not start selling papers right away. Isidore Gralla, in

testifying for the defense, said he saw Ritter run in front of appellant to sell papers; that "Mike wasn't fast enough to get up to any customers as fast as Ritter was"; that he overheard Ritter say what he was going to do to Hinshaw several days before the accident: "Ritter says, why, he could make sort of a monkey out of him—make him act around like a monkey. In other words, Ritter was supposed to be the boy on the corner that was selling the papers and getting around fast, and made him stand there like a dumb-bell." Ritter also testified there was no trouble between them before appellant started to work, "only he kept shoving me around a lot, but that's what he done all the time; I never paid any attention to it." According to Ritter, on the occasion in question he had made a sale to a lady who gave him a quarter, and just as he put his hand and arm out to give her the change, appellant, who was behind him, delivered the blow that fractured his jaw; the blow dazed him and he sank to his knees on the box "that had two rocks on it that held the newspapers from the wind blowing them away, and as I fell down I fell on these, and as I fell I picked them up, and as I got up, Hinshaw run. . . . I threw one rock at him, and the next one I couldn't throw at all— just dropped on the sidewalk. . . . I staggered over to an officer there and all the people started hollering." He testified that appellant had said to him when no one else was present: "You ain't going to last here a week." "Q. By Mr. Hill: Just before you started to sell this paper to the lady, had you had any encounter with the defendant at all? A. None whatsoever. Q. Had you had any trouble there between you? A. No hard feelings between me, but he always had hard feelings toward me. Q. What I am getting at is this, Mr. Ritter: I believe you stated that there had been some shoving around there. A. Yes. Q. I want you to state what had happened in that regard. A. Why, I seen a woman come up for a paper, and I dashed over to give it to her, and I just sold one to a man, and I turned around to sell it to a lady, and just then he kicked me in the shins—I never paid no attention, and she gave me twenty-five cents, and I was making change, and just as I was about to make change I got struck." Ritter denied saying he would make a monkey out of appellant. His wife and his brother, George P. Ritter, testified as to the shoving and pushing.

For instance, upon one occasion as Mrs. Robert Ritter approached her husband, the appellant, in trying to sell her a paper, shoved her and stepped on her foot. She testified that the day before the injury she overheard the following conversation between Abe Gralla, the brother of Isidore Gralla, who had employed appellant, and appellant: "He said to Mike Hinshaw, 'What did we put you here for?' . . . and he says, 'I told you I would have him gone in a week, so give me the week—the week ain't up; give me a week, will you? So, shut up.' Q. Who said that? A. Michael Hinshaw." George P. Ritter, the complaining witness' brother, testified that when he walked up to his brother, Robert, appellant stepped in and shoved Robert away and shoved a paper into his face. When he said he didn't want a paper the appellant turned and said to the complaining witness, "I'll get you yet." He further testified that his brother "was kind of scared of him," referring to appellant.

Dr. C. E. Early testified that he attended the complaining witness at Golden Gate Hospital; that "he had a swollen jaw, and the lower jaw was fractured on both the left and right sides, and both fractures were compound—that is, broken through the soft structures into the mouth; and he was bleeding from the mouth. . . . The fracture on the left jaw . . . broke through the socket to the last jaw tooth, allowing the fractured bone on the inside to be partially exposed on the inside of the mouth. The fracture on the right side was a little more forward, also transversely to the long angle of the jaw, and broke between the sockets of two teeth"; that the patient could not readily open and shut his mouth, his teeth were loosened, and that the left third molar had to be extracted in order to get the fracture in alignment. Dr. G. F. Boehme testified that he made a complete physical examination of the complaining witness: "He had a contusion of the side of his jaw . . . and a fractured mandible." Les Roche, a witness on behalf of the people, testified that in the presence of a number of persons in the county jail some time between the middle of April and the middle of May he heard the defendant say he hit a man and broke his jaw. "Q. Just state what you heard Hinshaw say that time. A. I heard him say that they asked when they brought him in what they brought him in for, and he said he hit a man down the street and broke his jaw."

Reburn Barr, a witness for the defense, who was an eye-witness of the affair, testified that appellant "slipped a little bit and rubbed up against" the complaining witness, who "fell off the curb"; that the complaining witness saw appellant coming and kicked back and then appellant kicked frontwards twice and the complaining witness "stood up like he was going to strike." The appellant testified: "I stepped up to get a sale, and he stepped on my toes, and he kicked back like that [indicating], and I kicked that way [indicating], and that way [indicating], and I turned around to see." On cross-examination he said his fist was doubled up when the blow was struck; that there was not much force; that Ritter had his arm raised; that appellant was behind Ritter when the sale was made—that is, Ritter was between appellant and the customer; that Ritter stepped on his toes and kicked back twice; that he kicked forward twice, walked around facing Ritter and then struck the blow. In the opening address to the jury the attorney for the people said that the evidence would show certain facts, among others, that appellant was trained in the art of boxing, and that he weighed considerably more than the complaining witness—his weight being about 152 pounds. In replying, the attorney for appellant stated the evidence would show that he took part in only one prizefight, and that was when he was sixteen years old. We have not found any testimony in the record showing appellant's weight or whether he had engaged in prizefighting. The weight of the complaining witness was given, however. But apart from the testimony, the jury could have determined the question of the relative size of the men from their appearance in the courtroom.

In thus reviewing the evidence we have not attempted to determine the facts, for that is a matter committed to the jury and to the court below. We have surveyed it only as to its legal import, with the view of determining whether the jury could have found that the assault was the result of a conspiracy between Isidore Gralla and appellant to drive the complaining witness away from the corner; whether, when the assault was made, the complaining witness was taken unawares; whether the blow was intended to and did incapacitate him; and whether the assault was by means or force likely to produce great bodily injury. In other words, viewing the evidence as matter of law, could the jury have

found that the assault was felonious within the meaning of section 245?

[14] It follows that even if the amended information did not allege the offense sufficiently, the omission was supplied by the evidence received on the trial. We therefore find there was no miscarriage of justice. (8 Cal. Jur. 605.) Among the cases cited in the note to Cal. Jur. is *People* v. *Bonfanti*, 40 Cal. App. 614 [181 Pac. 80], which held, under article VI, section 4½, of the constitution, that the failure to allege in a case of rape that the complaining witness was not the wife of the defendant—a distinct element in the crime—did not constitute a miscarriage of justice where the proof showed the relationship did not exist. This court denied a petition for hearing herein. The following authorities are also cited in the note: *People* v. *Brown*, 37 Cal. App. 101 [173 Pac. 621]; *People* v. *Ruiz*, 39 Cal. App. 593 [179 Pac. 691]; *People* v. *Griesheimer*, 176 Cal. 44 [167 Pac. 521]; *People* v. *Lauman*, 187 Cal. 214 [201 Pac. 459]; *People* v. *Evanoff*, 45 Cal. App. 108 [187 Pac. 54]. Nor was appellant prejudiced within the meaning of sections 960, 1258, and 1404 of the Penal Code.

4. We will next consider appellant's assignments of error occurring during the trial. The first is that the court erred in denying his application to enter a plea of once in jeopardy for a "misdemeanor growing out of the said act so that the same would estop any further proceedings in the event that the jury found the defendant guilty of a simple assault or a battery." It was stipulated that a complaint charging a misdemeanor was filed in the police court, the docket reading thus—"on motion prosecuting attorney, felony charge pending, charge dismissed and defendant discharged." It was while the complaint was pending the felony complaint was filed. The point first made was that appellant was once in jeopardy as to the felony charge. When *People* v. *Brown*, 42 Cal. App. 462 [183 Pac. 829], was cited, counsel for appellant conceded that point was not well taken. It has been shown that appellant sought by the plea of once in jeopardy in the misdemeanor case to be in a position to urge it in the event the jury returned a verdict for simple assault. The court refused to entertain the plea and said: "Before the conclusion of the case I will entertain any further motions you may make and rule upon them without

prejudice by any former rulings." As the verdict was for a felony, it would seem there was no occasion for a further ruling on the point. [15] However, a plea of once in jeopardy will not lie in either a felony or misdemeanor case unless there has been a former acquittal or conviction upon a valid indictment or information before a competent court and a jury has been impaneled and sworn to try the charge. (*Ex parte Harron,* 191 Cal. 457. [217 Pac. 728].) Here there was no trial of the assault and battery charge. Counsel for appellant at one point in the proceedings, however, spoke of a plea in bar and referred to section 1387 of the Penal Code. [16] But the provision of that section that a dismissal of a misdemeanor complaint is a bar to a further prosecution unless the order is explicitly made for the purpose of amending the pleading was met in this instance, for, as has been stated, before the motion to dismiss the first complaint was made the complaint charging the felony was on file.

[17] It is next claimed that the court erred in allowing, over appellant's objection, testimony of the admission by appellant that he had said in the county jail he hit a man down the street and broke his jaw. The ruling was clearly proper, for the admission (subd. 2, sec. 1870, sec. 1832, Code Civ. Proc.) tended to rebut the presumption of innocence, and the fact that appellant had not denied the assault rendered the admission no less provable. [18] The prosecution was entitled to make out its case in chief without regard to whether appellant denied the assault. It is true that the *corpus delicti* should first have been established, but we cannot say, and especially in view of the fact the assault was not denied, that the action of the court in yielding to the prosecution as to the order of proof was prejudicial to appellant.

[19] The ruling excluding testimony as to what the complaining witness said to the policeman after the assault had been committed, upon the ground it was hearsay, was proper. It was claimed by appellant to be a part of the *res gestae.* The statement itself does not appear in the record, and it is shown that the conversation was not sought from the complaining witness during his direct examination by the people. When he spoke to the policeman appellant had left the scene of the assault, and what was said may have been merely the narration of a past event. This is also true of the point as

to what the appellant said to the arresting officer after the assault.

[20]    There is no merit in the objection to the testimony of Mrs. Ritter and George P. Ritter as to the hostile declarations of appellant concerning the complaining witness on the two occasions already referred to.  It is argued the testimony was no part of the *res gestae*.  But the declarations were admissible as tending to reflect the state of mind of appellant at the time he committed the assault.

Error is assigned to the refusal of the court to allow the complaining witness to answer on cross-examination whether prior to the assault he had not said to appellant "that you would make a monkey out of him before you left there?"  It is claimed that if the witness had been allowed to answer the question he would have corroborated the testimony of Isidore Gralla on the point.  This claim seems to be without foundation in view of the fact that later the witness denied he made the statement.

[21]    It is sufficient to say with regard to the claim that the testimony of Reburn Barr, referred to in appellant's brief as the only other eye-witness of the assault, should have been accepted by the jury, that it was solely for the jury to pass on that question.

[22]    Error is predicated on a remark made by the judge to appellant in an apparent effort to have him speak louder when he was testifying.  As it does not appear that any objection was made or that an admonitory instruction to the jury was requested at the time, the incident calls for no further consideration.

[23]    5.  An objection, apparently made for the first time in appellant's opening brief, is addressed to the remarks of the district attorney "at the time of passing on the application for probation and pronouncing sentence," and it is assigned as misconduct.  As the jury had rendered its verdict fifteen or sixteen days before, and it was after the motions for a new trial and in arrest of judgment had been denied, it will not be necessary to pursue the point.

6.  Appellant also complains of errors in six instructions which were given to the jury.  We shall, for convenience of reference, discuss them in the order of their presentation in appellant's opening brief in the district court of appeal and designate them as a, b, c, d, e, and f, respectively.

[24] We find no error in instruction a. There is no basis for the claim that an attempt was made by the court to intimate to the jury that it had an opinion as to the guilt or innocence of appellant. The instruction follows the introduction to subdivision 1 of section 2061 of the Code of Civil Procedure, and correctly declares the respective functions of the court and the jury in matters of evidence.

The portion omitted in instruction b was substantially given elsewhere. [25] One omitted portion had the vice of singling out the appellant as a witness and charging as to his testimony.

[26] Instruction c is not open to the objection that it led the jury ''to consider circumstances which had no connection with the case.'' It correctly declared the rule of circumstantial evidence and stated that if the evidence was sufficient to establish appellant's guilt the jury should so find, whether the evidence be direct or circumstantial.

There is no foundation for the assertion that by instruction d the jury was practically charged that appellant ''started this fight with the premeditation beforehand to make a felonious assault.'' [27] The instruction is given in the abstract and correctly states the recognized principle of law ''that self-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault.''

The objection to instruction e is that it ''practically makes the jurors judges of whether the defendant believed that he was in danger or not. The question was how did it appear to the defendant at the time and not how it appeared to the jury at the time of the trial.'' [28] The jurors are the final judges as to whether a defendant believed he was in danger at the time he takes the law into his own hands and they may accept or reject his testimony that he did so believe.

[29] Instruction f covered the subject of flight and was given in approved form. The question whether appellant left the scene because of a consciousness of guilt, as claimed by the prosecution, or whether, as testified by him, he left to avoid being struck by two rocks thrown at him by Ritter,

was involved in conflict, and the instruction was framed in hypothetical form.  Here there was no error.

Appellant also complains of the rejection by the court of several instructions proposed by him.  [30] Taking such instructions in the order they appear in the clerk's transcript, it may be said of the first that it was erroneous in stating that if appellant did not use a deadly weapon and did not intend to commit murder the verdict must be for him; the second declared that unless the means used was something other than his fists the offense would be only a misdemeanor.  [31] This was misleading in view of the evidence, and it was open to the additional objection that it charged that if the jury found appellant was arrested and taken before the justices' court and the charge dismissed by the prosecution, such dismissal is a bar, the court is without jurisdiction, and they must acquit him.  This statement referred to the charge of assault and battery, and for the reasons already given was erroneous.  [32] The third declared that the use of fists or hands is not regarded as a deadly weapon.  It was not claimed that a deadly weapon was used.  The balance of the instruction covered a part of the preceding one.  [33] By the next instruction the jury is charged, among other things, that the breaking of the jaw is not a probable consequence of a blow with the bare fists, *and he is not presumed to have intended that result, "and if he did not so intend the crime committed could be nothing more than a misdemeanor."*  We have added the italics as indicating an invasion of the province of the jury.  The rest of the instruction invades the province of fact on the subject of self-defense.

[34] Appellant's next proposed instruction violates section 19, article VI, of the constitution, for it tells the jury "that the fact of the disparity in size has nothing to do with the guilt or innocence of the defendant."

"Given elsewhere" was the proper indorsement to the succeeding instruction.

The next instruction may be disposed of by the statement that appellant's "good reputation for honesty, truth and integrity" was not put in issue.

In view of the entire charge it was not necessary that this instruction on the subject of the presumption of innocence should have been given.

[35] We find the final proposed instruction was objectionable for the reason it charged the jury that if they found appellant was only guilty of the offense provided by section 240 and punishable by section 241 of the Penal Code the dismissal of the first complaint is a bar, and the jury must therefore acquit him.

Appellant's points call for no further discussion.

The judgment and the order denying the motion for a new trial are affirmed.

Lennon, J., Seawell, J., Myers, C. J., Richards, J., Shenk, J., and Waste, J., concurred.